1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          CENTRAL DISTRICT OF CALIFORNIA

9

10

11   MARY V. GILES,                    )      No. EDCV 08-0270-RC
                                       )
12            Plaintiff,               )
                                       )      OPINION AND ORDER
13       v.                            )
                                       )
14   MICHAEL J. ASTRUE,                )
     Commissioner of Social Security,  )
15                                     )
              Defendant.               )
16   _____)

17

18        Plaintiff Mary V. Giles filed a complaint on March 6, 2008,

19   seeking review of the Commissioner's decision denying her application

20   for disability benefits, and on July 24, 2008, the Commissioner

21   answered the complaint.  The parties filed a joint stipulation on

22   September 11, 2008.

23

24                              **BACKGROUND**

25                                  **I**

26        On May 25, 2005 (protective filing date), plaintiff applied for

27   disability benefits under the Supplemental Security Income program of

28   Title XVI of the Social Security Act ("the Act"), claiming an

1 | inability to work since January 1, 2000, due to fibromyalgia and eye

2 | degeneration.[1]  Certified Administrative Record ("A.R.") 11, 99-101,

3 | 109.  The plaintiff's application was initially denied on July 8,

4 | 2005, and was again denied following reconsideration on October 21,

5 | 2005.  A.R. 70-82.  The plaintiff then requested an administrative

6 | hearing, which was held on May 23 and October 19, 2007, before Admin-

7 | istrative Law Judge Thomas J. Gaye ("the ALJ").  A.R. 68-69, 537-70.

8 | On November 21, 2007, the ALJ issued a decision finding plaintiff is

9 | not disabled.  A.R. 8-18.  The plaintiff appealed this decision to the

10 | Appeals Council, which denied review on February 6, 2008.  A.R. 4-7.

11 |

12 | **II**

13 | The plaintiff was born on June 23, 1959, and is currently 50

14 | years old.  A.R. 99, 102.  She is a high school graduate who has

15 | attended two years of college, has trained as a medical assistant and

16 | an investigative assistant, and has previously worked as a sales

17 | associate, care taker, data entry operator and sales clerk.  A.R. 110-

18 | 11, 113, 115-28, 141-42, 145.

19 |

20 | Between November 26, 2006, and September 9, 2007, the Riverside

21 | County Department of Mental Health ("DMH") provided plaintiff with

22 | mental health treatment, including psychotherapy and medication.[2]

23 |

---

24 | [1]  Plaintiff has previously filed multiple disability claims
dating back to October 1981; however, these claims have all been

25 | denied.  A.R. 50-63, 83-96, 102-04.

26 | [2]  The plaintiff has both physical and mental complaints;
however, she does not challenge the ALJ's findings regarding her

27 | physical complaints, and the Court will only review plaintiff's

28 | mental complaints and treatment.

A.R. 380-429, 467-92.  On December 8, 2006, Lisa Schmid, M.D., examined plaintiff, found she had auditory and visual hallucinations and "death wishes," among other symptoms, diagnosed plaintiff with severe, recurrent major depression, rule out schizophrenia, determined plaintiff's Global Assessment of Functioning ("GAF") was 20,[3] and prescribed plaintiff Paxil[4] and Risperdal.[5]  A.R. 483, 490-91.  On or about December 15, 2006, Katrina Ptucha, M.S., Ph.D. Intern, administered the Millon Clinical Multiaxial Inventory-II to plaintiff, and diagnosed plaintiff with recurrent moderate major depression and an unspecified personality disorder, with schizoid and avoidant traits.  A.R. 486-87.  Ms. Ptucha opined:

> [Plaintiff's] responses [to the test] were valid but
> guarded.  She likely under-reports psychological symptoms
> due to either defensiveness, fear of disapproval or a lack

---

[3]   A GAF of 20 means "[s]ome danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) or occasionally fails to maintain minimal personal hygiene (e.g., smears feces) or gross impairment in communication (e.g., largely incoherent or mute)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-THE RESPONDENT"), 34 (4th ed. (Text Revision) 2000).

[4]   "Paxil is prescribed for a serious, continuing depression that interferes with [the] ability to function.  Symptoms of this type of depression often include changes in appetite and sleep patterns, a persistent low mood, loss of interest in people and activities, decreased sex drive, feelings of guilt or worthlessness, suicidal thoughts, difficulty concentrating, and slowed thinking."  The PDR Family Guide to Prescription Drugs, 492 (8th ed. 2000).

[5]   "Risperdal is prescribed to treat severe mental illnesses such as schizophrenia."  Id. at 586.

1      of insight and introspection.  She is not attempting to

2      place herself in a favorable light, and she tends to

3      depreciate or devalue herself.  [¶]  . . .  [Plaintiff]

4      likely exhibits some dependent behavior and will react to

5      stress by withdrawing.  She shows a lack of initiative, has

6      a low self-concept, and views herself as weak, inadequate,

7      and ineffectual.  She tends to be socially alienated, is

8      pervasively anxious, and may experience a state of chronic

9      but moderate psychic stress.  She is probably most

10     comfortable when she is alone.  Around others, she is

11     passive, docile, respectful, and conforming.  She is overly

12     sensitive to rejection and hence views social situations as

13     a source of anxiety.  She is prone to separation anxiety and

14     depression.  Behaviorally, she is rigid, conscientious,

15     polite, organized, meticulous, punctual, and often

16     perfectionistic.

17

18  A.R. 487.  On December 27, 2006, plaintiff took the Wechsler Adult

19  Intelligence Scale, 3rd edition, scoring a full scale IQ of 90, which

20  is in the average range.  A.R. 484-85.  Plaintiff performed better on

21  tasks emphasizing her visual-motor processing speed than those

22  emphasizing her nonverbal reasoning ability, and she scored much

23  better on tasks that depend on verbal knowledge rather than on solving

24  problems that depend on short-term auditory memory.  A.R. 485.

25

26     On January 2, 2007, plaintiff experienced auditory hallucinations

27  telling her it was unsafe to ride in a car with her brother because he

28  would try to kill her, and Ms. Ptucha noted plaintiff was having

4

1  "difficulty differentiating the truth/reality from what the voices

2  say."  A.R. 479.  On January 30, 2007, after plaintiff had voiced

3  concerns about the side effects of her medication, Dr. Schmid switched

4  plaintiff's medications to Lexapro[6] and Seroquel.[7]  A.R. 468-70.  On

5  February 28, 2007, Dr. Schmid noted plaintiff has poor focus and

6  concentration and her medication causes sedation, slow processing and

7  dizziness, and Dr. Schmid opined plaintiff is permanently disabled.

8  A.R. 368.

9

10  Between March 30 and April 3, 2007, plaintiff was involuntarily

11  hospitalized at Riverside County Regional Medical Center ("RCRMC")

12  under California Welfare & Institutions Code ("W.I.C.") § 5150,[8] after

13  stating she was planning to kill herself by overdosing on medication.

14  _____

15  [6]  Lexapro is indicated for the treatment of major
    depressive disorder and generalized anxiety disorder.
16  Physician's Desk Reference, 1175 (63st ed. 2009).

17  [7]  "Seroquel combats the symptoms of schizophrenia, a mental
    disorder marked by delusions, hallucinations, disrupted thinking,
18  and loss of contact with reality."  The PDR Family Guide to
19  Prescription Drugs at 610.

20  [8]  Section 5150 provides, in pertinent part:

21     When any person, as a result of mental disorder, is a
       danger to others, or to himself or herself, or gravely
22     disabled, a peace officer, member of the attending
       staff . . . of an evaluation facility designated by the
23     county, designated members of a mobile crisis team
       . . . , or other professional person designated by the
24     county may, upon probable cause, take, or cause to be
       taken, the person into custody and place him or her in
25     a facility designated by the county and approved by the
26     State Department of Mental Health as a facility for 72-
27     hour treatment and evaluation.

28  Cal. Welf. & Inst. Code § 5150.

1  A.R. 449-66, 493-513.  Probir K. Paul, M.D., initially examined

2  plaintiff and diagnosed her with recurrent major depression with

3  psychotic features, and determined her GAF was 25.[9]  A.R. 457-58.  The

4  plaintiff was treated with Cymbalta,[10] Seroquel and Ativan,[11] and when

5  plaintiff was discharged, Debbie Rosario, M.D., diagnosed her as

6  having a major depressive disorder, post-traumatic stress disorder,

7  and an unspecified eating disorder, and determined her GAF was 51-

8  55.[12]  A.R. 449-50.

9

10      Between April 27 and May 2, 2007, plaintiff was again

11  involuntarily hospitalized at RCMRC under W.I.C. §§ 5150 & 5250,[13]

12  _____

13      [9]  A GAF of 25-30 means that the plaintiff's "[b]ehavior is
   considerably influenced by delusions or hallucinations or serious
14  impairment in communication or judgment (e.g., sometimes
   incoherent, acts grossly inappropriately, suicidal preoccupation)
15  or inability to function in almost all areas (e.g., stays in bed
   all day; no job, home, or friends)."  DSM-IV-THE RESPONDENT at
16  34.

17
       [10]  "Cymbalta is indicated for the acute and maintenance
18  treatment of major depressive disorder" as well as for the acute
   treatment of generalized anxiety disorder, and the management of
19  diabetic peripheral neuropathic pain and fibromyalgia.
   Physician's Desk Reference, 1802 (63rd ed. 2009).
20
       [11]  Ativan "is used in the treatment of anxiety disorders
21  and for short-term . . . relief of the symptoms of anxiety."  The
   PDR Family Guide to Prescription Drugs at 60.
22
       [12]  A GAF of 51-55 indicates "[m]oderate symptoms (e.g.,
23  flat affect and circumstantial speech, occasional panic attacks)
   or moderate difficulty in social, occupational, or school
24  functioning (e.g., few friends, conflicts with peers or co-
   workers)."  DSM-IV-THE RESPONDENT at 34.
25
       [13]  Section 5250 provides, in pertinent part:
26
       If a person is detained for 72 hours under the
27     provisions of . . . Section 5150 [et seq.], or under
28

6

1  after she threatened to kill herself by walking into traffic.  A.R.

2  430-48, 513-36.  She was diagnosed with recurrent major depression,

3  without psychotic features, and chronic post-traumatic stress

4  disorder, and her GAF was determined to be 30 (highest past year

5  40).[14]  A.R. 521-22, 536.  The plaintiff was treated with

6  psychotherapy and prescribed Seroquel, Cymbalta, and Topamax.[15]  A.R.

7

8

9
10
11

      court order for evaluation . . . and has received an
      evaluation, he or she may be certified for not more
      than 14 days of intensive treatment related to the
      mental disorder or impairment by chronic alcoholism,
      under the following conditions:

12
13
14
15

            (a) The professional staff of the agency or
            facility providing evaluation services has
            analyzed the person's condition and has found
            the person is, as a result of mental disorder
            or impairment by chronic alcoholism, a danger
            to others, or to himself or herself, or
            gravely disabled.

16
17

            (b) The facility providing intensive
            treatment is designated by the county to
            provide intensive treatment, and agrees to
            admit the person. . . .

18
19

            (c) The person has been advised of the need
            for, but has not been willing or able to
            accept, treatment on a voluntary basis.

20
21
22

Cal. Welf. & Inst. Code § 5250.  Here, plaintiff was found to be
a danger to herself after she stated she had access to a gun and
would use it.  A.R. 526.

23
24
25
26
27

[14]  A GAF of 40 indicates "[s]ome impairment in reality
testing or communication (e.g., speech is at times illogical,
obscure, or irrelevant) or major impairment in several areas,
such as work or school, family relations, judgment, thinking, or
mood (e.g., depressed man avoids friends, neglects family, and is
unable to work; child frequently beats up younger children, is
defiant at home, and is failing at school).  DSM-IV-THE
RESPONDENT at 34.

28

[15]  Topamax is used to treat seizures and migraine
headaches.  Physician's Desk Reference, 2380 (62nd ed. 2008).

1  515-16.  When plaintiff was discharged from the hospital, she was

2  found to be much improved, was no longer suicidal, her depression was

3  under control, and her GAF was 55.  A.R. 516.

4

5      On May 8, 2007, Dr. Schmid prescribed Topamax for plaintiff as a

6  mood stabilizer.  A.R. 401.  On June 13, 2007, Dr. Schmid increased

7  plaintiff's Cymbalta after noting plaintiff was depressed, her mood

8  was blunted, she had a suicidal ideation, and she was rambling.  A.R.

9  391.  On July 2, 2007, Dr. Schmid again examined plaintiff and found

10 she had a suicidal ideation, her attention and concentration were

11 impaired, and she was rambling.  A.R. 388.  On September 6, 2007, Dr.

12 Schmid opined plaintiff cannot complete a 40-hour work week without

13 decompensating, and she cannot maintain a sustained level of

14 concentration, sustain repetitive tasks for an extended period, adapt

15 to new or stressful situations, or interact appropriately with family,

16 strangers, co-workers, or supervisors/authority figures.  A.R. 380.

17 In reaching this conclusion, Dr. Schmid opined plaintiff's thought

18 process is concrete, she has auditory hallucinations, psychotic

19 symptoms influence plaintiff's behavior, her memory and judgment are

20 moderately impaired, and plaintiff is anxious and depressed with

21 suicidal ideation, decreased energy, apathy, and social withdrawal.

22 Id.

23

24     On August 9, 2007, Reynaldo Abejuela, M.D., a psychiatrist,

25 examined plaintiff and diagnosed her with an unspecified depressive

26 disorder versus major depression, by history.  A.R. 369-79.  Dr.

27 Abejuela found:

28

1       [Plaintiff's] mental status examination revealed some mild

2       depression and mild anxiety.  It appears that the medication

3       is helping the [plaintiff].  She was noted to be articulate

4       today, with no evidence of illogical thinking, no evidence

5       of psychosis.  She reported seeing and hearing things but

6       she did not appear to be responding to internal stimuli.

7       Reasoning and comprehension remain intact.  Cognitive

8       functioning is within normal.  On formal testing, the

9       [plaintiff] recalled 3/3 objects after three and five

10      minutes and was able to do simple math.  [¶]  After

11      reviewing the records and correlating those to the history

12      and mental status examination today, my overall assessment

13      is that there is no mental restriction in the [plaintiff's]

14      occupational and social functioning.

15

16 A.R. 377.  Dr. Abejuela also found plaintiff has no mental restriction

17 in her daily activities, no repeated episodes of emotional

18 deterioration in work-like situations, and no impairment in her

19 ability to understand, remember and carry out simple instructions, she

20 has "mild" difficulties maintaining social functioning and

21 concentration, persistence, and pace, and she has "mild" impairment in

22 her ability to: understand, carry out, and remember complex

23 instructions; respond to co-workers, supervisors and the public;

24 respond appropriately to usual work situations; and deal with changes

25 in a routine work setting.  A.R. 377-78.  Dr. Abejuela concluded

26 plaintiff's "psychiatric limitations are none to mild[,]" her

27 psychiatric prognosis is "fair to good[,]" and "[i]t is expected that

28 with continuous psychiatric medication, the [plaintiff's] psychiatric

1  symptoms should abate in the next few months."  A.R. 378.

2

3                              **DISCUSSION**

4                                 **III**

5      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

6  review the Commissioner's decision denying plaintiff disability

7  benefits to determine if his findings are supported by substantial

8  evidence and whether the Commissioner used the proper legal standards

9  in reaching his decision.  <u>Vernoff v. Astrue</u>, 568 F.3d 1102, 1105 (9th

10  Cir. 2009); <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009).

11

12      The claimant is "disabled" for the purpose of receiving benefits

13  under the Act if she is unable to engage in any substantial gainful

14  activity due to an impairment which has lasted, or is expected to

15  last, for a continuous period of at least twelve months.  42 U.S.C.

16  § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

17  burden of establishing a prima facie case of disability."  <u>Roberts v.</u>

18  <u>Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert.</u> <u>denied</u>, 517 U.S. 1122

19  (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996).

20

21      The Commissioner has promulgated regulations establishing a five-

22  step sequential evaluation process for the ALJ to follow in a

23  disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ

24  must determine whether the claimant is currently engaged in

25  substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the

26  **Second Step**, the ALJ must determine whether the claimant has a severe

27  impairment or combination of impairments significantly limiting her

28  from performing basic work activities.  20 C.F.R. § 416.920(c).  If

1 │ so, in the **Third Step**, the ALJ must determine whether the claimant has

2 │ an impairment or combination of impairments that meets or equals the

3 │ requirements of the Listing of Impairments ("Listing"), 20 C.F.R.

4 │ § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the

5 │ **Fourth Step**, the ALJ must determine whether the claimant has

6 │ sufficient residual functional capacity despite the impairment or

7 │ various limitations to perform her past work.  20 C.F.R. § 416.920(f).

8 │ If not, in **Step Five**, the burden shifts to the Commissioner to show

9 │ the claimant can perform other work that exists in significant numbers

10 │ in the national economy.  20 C.F.R. § 416.920(g).

11 │

12 │     Moreover, where there is evidence of a mental impairment that may

13 │ prevent a claimant from working, the Commissioner has supplemented the

14 │ five-step sequential evaluation process with additional regulations

15 │ addressing mental impairments.  <u>Maier v. Comm'r of the Soc. Sec.</u>

16 │ <u>Admin.</u>, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the

17 │ ALJ must determine the presence or absence of certain medical findings

18 │ relevant to the ability to work.  20 C.F.R. § 416.920a(b)(1).  Second,

19 │ when the claimant establishes these medical findings, the ALJ must

20 │ rate the degree of functional loss resulting from the impairment by

21 │ considering four areas of function: (a) activities of daily living;

22 │ (b) social functioning; (c) concentration, persistence, or pace; and

23 │ (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2-4).  Third,

24 │ after rating the degree of loss, the ALJ must determine whether the

25 │ claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).

26 │ Fourth, when a mental impairment is found to be severe, the ALJ must

27 │ determine if it meets or equals a Listing.  20 C.F.R. §

28 │ 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then

1 perform a residual functional capacity assessment, and the ALJ's

2 decision "must incorporate the pertinent findings and conclusions"

3 regarding plaintiff's mental impairment, including "a specific finding

4 as to the degree of limitation in each of the functional areas

5 described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

6

7     Applying the five-step sequential evaluation process, the ALJ

8 found plaintiff has not engaged in substantial gainful activity since

9 May 26, 2005, the application date.  (Step One).  The ALJ then found

10 plaintiff has severe impairments of fibromyalgia, controlled asthma,

11 right wrist tendinitis, uterine fibroids (status post-hysterectomy),

12 controlled hyperlipidemia, high myopia (status post-surgery in August

13 2004), and obesity; however, her depression is not severe.  (Step

14 Two).  The ALJ next found plaintiff does not have an impairment or

15 combination of impairments that meets or equals a Listing.  (Step

16 Three).  The ALJ then determined plaintiff cannot perform her past

17 relevant work.  (Step Four).  Finally, the ALJ found there are jobs

18 that exist in significant numbers in the national economy that

19 plaintiff can perform; therefore, she is not disabled.  (Step Five).

20

21                                                         **IV**

22     The Step Two inquiry is "a de minimis screening device to dispose

23 of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart,

24 433 F.3d 683, 687 (9th Cir. 2005).  Including a severity requirement

25 at Step Two of the sequential evaluation process "increases the

26 efficiency and reliability of the evaluation process by identifying at

27 an early stage those claimants whose medical impairments are so slight

28 that it is unlikely they would be found to be disabled even if their

1   age, education, and experience were taken into account." <u>Bowen v.</u>

2   <u>Yuckert</u>, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119

3   (1987).  However, an overly stringent application of the severity

4   requirement violates the Act by denying benefits to claimants who do

5   meet the statutory definition of disabled.  <u>Corrao v. Shalala</u>,

6   20 F.3d 943, 949 (9th Cir. 1994).

7

8       A severe impairment or combination of impairments within the

9   meaning of Step Two exists when there is more than a minimal effect on

10  an individual's ability to do basic work activities.  <u>Webb</u>, 433 F.3d

11  at 686; <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001); <u>see</u>

12  <u>also</u> 20 C.F.R. § 416.921(a) ("An impairment or combination of

13  impairments is not severe if it does not significantly limit [a

14  person's] physical or mental ability to do basic work activities.").

15  Basic work activities are "the abilities and aptitudes necessary to do

16  most jobs," including physical functions such as walking, standing,

17  sitting, lifting, pushing, pulling, reaching, carrying or handling, as

18  well as the capacity for seeing, hearing and speaking, understanding,

19  carrying out, and remembering simple instructions, use of judgment,

20  responding appropriately to supervision, co-workers and usual work

21  situations, and dealing with changes in a routine work setting.

22  20 C.F.R. § 416.921(b); <u>Webb</u>, 433 F.3d at 686.  If the claimant meets

23  her burden of demonstrating she suffers from an impairment affecting

24  her ability to perform basic work activities, "the ALJ *must* find that

25  the impairment is 'severe' and move to the next step in the SSA's

26  five-step process."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1160 (9th

27  Cir. 2001) (emphasis in original); <u>Webb</u>, 433 F.3d at 686.

28

13

1    The ALJ found in Step Two that plaintiff does not have a severe

2  mental impairment.  A.R. 13.  However, plaintiff contends this finding

3  is not supported by substantial evidence because the ALJ failed to

4  properly consider the opinion of Dr. Schmid, her treating

5  psychiatrist.  The plaintiff is correct.

6

7    The medical opinions of treating physicians are entitled to

8  special weight because the treating physician "is employed to cure and

9  has a greater opportunity to know and observe the patient as an

10  individual."  Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

11  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

12  1999).  Therefore, the ALJ must provide clear and convincing reasons

13  for rejecting the uncontroverted opinion of a treating physician, Ryan

14  v. Comm'r of the Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir.

15  2008); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), and

16  "[e]ven if [a] treating doctor's opinion is contradicted by another

17  doctor, the ALJ may not reject this opinion without providing

18  'specific and legitimate reasons' supported by substantial evidence in

19  the record."  Reddick, 157 F.3d at 725; Tommasetti v. Astrue,

20  533 F.3d 1035, 1041 (9th Cir. 2008).

21

22    The ALJ found plaintiff's depression is not severe for several

23  reasons.  First, the ALJ found plaintiff's depression "has not lasted

24  and is not expected to last 12 months[,]" and plaintiff "was not seen

25  or treated until April 2007."  A.R. 13.  However, these findings are

26  not correct.  Rather, plaintiff received mental health treatment from

27  DMH beginning in November 2006, and that treatment continued through,

28  at least, the administrative hearing in October 2007.  A.R. 449-66,

14

1 | 493-513, 553-54, 558-59, 562-64.  Second, the ALJ noted that plaintiff

2 | "testified that her medications help her depression."  A.R. 13.

3 | However, this also is not correct.  Rather, when asked whether her

4 | medications help her depression, plaintiff stated that "[i]t helps for

5 | me not to go into the stage . . . of wanting to take a gun and shoot

6 | myself . . . [o]r throw myself into traffic."  A.R. 553-54.  Although,

7 | "[i]mpairments that can be controlled effectively with medication are

8 | not disabling for the purpose of determining eligibility for SSI

9 | benefits[,]" Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001,

10 | 1006 (9th Cir. 2006), the fact that medications help prevent a

11 | claimant from committing suicide is not the same thing as controlling

12 | a claimant's depression.  Here, recent adjustments to plaintiff's

13 | medication clearly show her mental health problems are not controlled

14 | with medication, see, e.g., 388, 391, 401, 554, and Dr. Schmid's

15 | opinion confirms this.  A.R. 380.

16 |

17 |     The ALJ rejected Dr. Schmid's opinion of September 6, 2007,

18 | because it "is quite conclusory, providing very little explanation of

19 | the evidence relied on in forming that opinion[.]"  A.R. 16.  Of

20 | course, "[t]he ALJ need not accept the opinion of any physician,

21 | including a treating physician, if that opinion is brief, conclusory,

22 | and inadequately supported by clinical findings[,]" Thomas v.

23 | Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Bray v. Astrue,

24 | 554 F.3d 1219, 1228 (9th Cir. 2009), but, here, Dr. Schmid's opinion

25 | was accompanied by 75 pages of medical records from DMH and another 79

26 | pages of medical records from RCRMC.  A.R. 382-536.  Since Dr.

27 | Schmid's opinion cannot be separated from DMH's records, the ALJ's

28 | rationale is not a specific and legitimate reason for rejecting Dr.

1  Schmid's opinion.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1037 n.8

2  (9th Cir. 2007) (Treating physician's opinions were adequately

3  supported when record contains "more than 50 pages of medical reports

4  and clinical findings based on three years of treatment and objective

5  physical evidence, including X-rays, lab tests, physical examinations,

6  and the diagnostic surgery that [the physician] himself performed.").

7

8       The ALJ also gave "little weight" to Dr. Schmid's opinion that

9  plaintiff "was unable to complete a 40[-]hour workweek without

10  decompensating" because "this is an issue reserved to the

11  Commissioner."  A.R. 16.  However, this rationale also does not

12  constitute a specific and legitimate reason for rejecting Dr. Schmid's

13  opinion.  See Reddick, 157 F.3d at 725 (The ALJ is "'not bound by the

14  uncontroverted opinions of the claimant's physicians on the ultimate

15  issue of disability, but he cannot reject them without presenting

16  clear and convincing reasons for doing so.'" (citations omitted));

17  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (same).

18

19       For all these reasons, the ALJ's failure to properly consider Dr.

20  Schmid's opinion is legal error, and the Step Two finding is not

21  supported by substantial evidence.  Smolen, 80 F.3d at 1286.

22

23                                    V

24       When the ALJ's decision is not supported by substantial evidence,

25  the court has the authority to affirm, modify, or reverse the decision

26  "with or without remanding the cause for rehearing."  42 U.S.C.

27  § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).

28  Generally, "'the proper course, except in rare circumstances, is to

16

1  remand to the agency for additional investigation or explanation.'"

2  <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004); <u>Moisa v.</u>

3  <u>Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004).  Here, remand is

4  appropriate so the ALJ can properly assess the medical evidence to

5  determine whether plaintiff has a severe mental impairment.[16]  <u>Webb</u>,

6  433 F.3d at 688; <u>Edlund</u>, 253 F.3d at 1160.

7

8  **ORDER**

9      IT IS ORDERED that: (1) plaintiff's request for relief is

10  granted; and (2) the Commissioner's decision is reversed, and the

11  action is remanded to the Social Security Administration for further

12  proceedings consistent with this Opinion and Order, pursuant to

13  sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered

14  accordingly.

15

16  DATE:  August 11, 2009            /S/ ROSALYN M. CHAPMAN

17                                   ROSALYN M. CHAPMAN
                                     UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25      [16]  Having reached this conclusion, it is unnecessary to
26  reach the other arguments plaintiff raises, none of which will
    provide plaintiff any greater relief than granted herein.
27
    R&R-MDO\08-0270.MDO
    8/10/09
28